UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEX CORDERO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 11-10098-JLT |
| v. ) | |
| ) | |
| THOMAS DICKHAUT, OSVALDO VIDAL, ) | |
| and ANTHONY MENDONSA ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION ON**
**DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**

[Docket Nos. 13, 22]

October 27, 2011

Boal, M.J.

Plaintiff Alex Cordero has sued, pro se, Defendants Thomas Dickhaut (Superintendent of Souza Baranowski Correctional Center), Osvaldo Vidal (Deputy Superintendent of Operations), and Anthony Mendonsa (Deputy Superintendent of Classification and Treatment) in their individual and official capacities for violations of Mr. Cordero's Eighth Amendment rights pursuant to 42 U.S.C. § 1983. (Docket No.1). Defendants have moved to dismiss Mr. Cordero's complaint, as well as strike portions of his opposition to Defendants' motion. (Docket Nos. 13, 22). For the reasons discussed below, this Court recommends that the District Court deny Defendants' motion to strike, and grant in part and deny in part Defendants' motion to dismiss.

1

## I. FACTS[1]

Mr. Cordero is an inmate at Souza Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts. On November 1, 2010, Mr. Cordero was taken to the J-3 Special Management Unit ("SMU") and placed in a double-bunk cell. Complaint ¶ 7. Shortly after he was placed in the cell, two guards brought Joonel Garcia, an inmate who was previously in a single cell in J-3, into Mr. Cordero's cell. Complaint ¶¶ 7-8. Mr. Cordero observed that Mr. Garcia was "walking real slow on top of looking weird" and he inquired as to whether Mr. Garcia was okay. Complaint ¶ 8. Mr. Garcia responded that he was okay and that his behavior was related to the medication that he was taking. Id.

The next morning, Mr. Garcia did not receive the medication he requested and "started pacing back and forth in the cell looking very agitated." Complaint ¶ 9. That evening, while Mr. Cordero was sleeping, Mr. Garcia used a shirt to strangle Mr. Cordero, pulling him off of the top bunk and cutting off his air supply until he lost consciousness. Complaint ¶ 10. Mr. Cordero regained consciousness in the Health Services Unit ("HSU") with pain in his neck and back, for which he received muscle relaxers. Id.

Mr. Cordero was released from the HSU the next day and moved into a single-bunk cell in the SMU. Complaint ¶ 11. As a result of this incident, Mr. Cordero suffered bruises on his face and body, and continues to have pain in his neck and back, as well as ongoing mental and emotional distress including nightmares. Complaint ¶¶ 12-13. Mr. Cordero seeks $100,000 in

---

[1] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Complaint and drawing all reasonable inferences in the Plaintiff's favor. See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

punitive damages and $75,000 in compensatory damages against each Defendant as well as costs and attorneys' fees. Complaint, p. 5.

Mr. Cordero alleges that the Defendants implemented a policy and practice of "double-bunking prisoners in the general population and segregation, even if prisoners refuse cellmates and are violent." Complaint ¶ 5. Mr. Cordero alleges that Mr. Garcia warned Defendants and the administration that he would hurt or assault anyone they tried to move into his cell. Complaint ¶ 6. Mr. Cordero also alleges that he was told by a friend in SMU that:

> he doesn't know why they would put him [Cordero] in a cell with Joonel Garcia knowing that [Garcia] is crazy, and that he just came from Bridgewater Hospital because he had just lost his brother in the street, and he [Garcia] told the administration that he did not want anymore cellmates because he is hearing voices and the voices are telling him to kill somebody, and they knew that because Mr. Garcia wrote them before all of this happened and they still put him in the cell . . . .

Complaint ¶ 11. Mr. Cordero alleges that Defendants failed to protect him by allowing him to be placed in a double-bunked cell with Mr. Garcia – "a prisoner with known mental health issues, who warned the administration that he would hurt and possibly 'kill' his next cellmate." Complaint ¶ 14.

## II. ANALYSIS

On April 27, 2011, Defendants moved to dismiss Mr. Cordero's complaint. (Docket No. 13). Defendants argue that the complaint should be dismissed because: (1) Mr. Cordero cannot bring a suit for damages against Defendants in their official capacities under Section 1983; (2) Mr. Cordero has failed to state an Eighth Amendment claim for failure to protect; and (3) that Defendants are entitled to qualified immunity. Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Defendants' Memo.") (Docket No. 14). Mr. Cordero argues that he

3

has stated a viable Eighth Amendment claim and that Defendants are not entitled to qualified immunity. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Opp.") (Docket No. 16).

### A. Scope of the Record

In his opposition to Defendants' motion, Mr. Cordero referred to and attached affidavits from other prisoners, including Mr. Garcia, describing Mr. Cordero's assault as well as other alleged instances of violence as a result of double-bunking prisoners. See Docket No. 16. Defendants filed a motion pursuant to Fed. R. Civ. P. 12(f) to strike the argument section of Mr. Cordero's opposition as well as the attached exhibits. See Motion to Strike Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Docket No. 22).

Rule 12(f) authorizes the Court to "strike from any pleading...any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) applies only to pleadings, which Rule 7 defines as a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, or a third-party answer. Fed. R. Civ. P. 7(a); see also Pilgrim v. Tufts, 118 F.3d 864, 868 (1st Cir. 1997). Rule 12(f) does not apply to motions and memoranda of law. Lipin v. Ellis, No. 07-92-P-S, 2007 U.S. Dist. LEXIS 54489, * 8 (D. Me. July 26, 2007). Moreover, a court's discretionary power to strike a portion of a pleading pursuant to Rule 12(f) is to be exercised cautiously. Fundi v. Citizens Bank of Rhode Island, No. 07-078, 2007 WL 2407106, * 3 (D.R.I. August 22, 2007). "[S]uch motions are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion." Boreri v. Fiat S.P.A., 763 F.2d 17, 23 (1st Cir. 1985). For all these reasons, this Court recommends that the District Court deny Defendants' motion to strike.

However, the Court will not consider the affidavits Mr. Cordero attached to his opposition nor any reference to them in his opposition. In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp.2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st Cir. 2000). "If ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, filing additional materials outside the pleadings does not automatically convert the motion into one for summary judgment. "If the district court chooses to ignore the supplementary materials and determines the motion under the Rule 12(b)(6) standard, no conversion occurs," Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 18-19 (1st Cir. 1992), and cases cited. Here, the affidavits attached to Mr. Cordero's opposition were not incorporated by reference in his complaint and are not matters of which the Court may take judicial notice. Accordingly, in deciding the motion to dismiss, the Court will not consider the affidavits submitted by Mr. Cordero in opposition to Defendants' motion or any argument referencing such affidavits.

B.  Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). Pro se pleadings are to be liberally construed. Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1991). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. Iqbal, 129 S.Ct. at 1950.

   C.   42 U.S.C. § 1983

Section 1983 is a vehicle through which individuals may sue certain persons acting under the color of state law for deprivation of federally assured rights. Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008). Specifically, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

42 U.S.C. § 1983. Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-4 (1989).

"A claim under Section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). For purposes of the Defendants' motion, there is no dispute that the Defendants were acting under color of state law. However, Defendants contend that Mr. Cordero has failed to state a claim that they deprived him of any constitutional rights.

1. <u>Claim Against Defendants In Their Official Capacities</u>

Mr. Cordero has sued the Defendants in both their individual and official capacities. Complaint ¶¶ 2-4. However, a state official acting in his official capacity cannot be sued for damages in a Section 1983 action. Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698, 700 (1st Cir. 1995); Rafferty v. Cranston Pub. Sch. Comm., 315 F.3d 21, 28 (1st Cir. 2002). Therefore, Mr. Cordero cannot pursue money damages against Defendants in their official capacity for his Section 1983 claims and those claims should be dismissed.[2]

2. <u>Claim Against Defendants In Their Individual Capacities</u>

Construing Mr. Cordero's pleadings liberally, the Court reads Mr. Cordero's complaint as asserting a claim against Defendants both as individuals, and, because of the nature of each

---

[2] To the extent that Mr. Cordero intended to sue the Department of Corrections for money damages, such claims must also be dismissed, as the Department of Corrections is not a "person" within the meaning of 42 U.S.C. § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984).

7

Defendant's office, in their supervisory capacities. In either context, however, the analysis is the same. "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, have violated the Constitution." Iqbal, 129 S.Ct. at 1948. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 1949.

Mr. Cordero's allegations regarding Defendants in their individual capacity are that: (1) Defendants instituted a policy and practice of double-bunking prisoners even if prisoners refuse cellmates and are violent, Complaint ¶ 5; and (2) Mr. Cordero's assailant was transferred from Bridgewater State Hospital to SBCC and had "specifically warned the Defendants and their administration that he would 'hurt' and 'assault' whoever they try to move into his cell," Complaint ¶ 6.

a. Eighth Amendment Claim

A prison official's deliberate indifference to a substantial risk of harm to an inmate violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828 (1994). Although not every injury a prisoner suffers at the hands of another prisoner is actionable, prison officials must take reasonable measures to guarantee an inmate's safety from attacks by other inmates. Id. at 833-4.

To establish an Eighth Amendment claim for a failure to protect, a plaintiff must show that: (1) objectively, the deprivation alleged is sufficiently serious, i.e. that the conditions of incarceration pose a substantial risk of serious harm; and (2) subjectively, that the defendant was deliberately indifferent to the plaintiff's health or safety. Id. at 834. A prison official may be

Defendant's office, in their supervisory capacities. In either context, however, the analysis is the same. "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, have violated the Constitution." Iqbal, 129 S.Ct. at 1948. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 1949.

Mr. Cordero's allegations regarding Defendants in their individual capacity are that: (1) Defendants instituted a policy and practice of double-bunking prisoners even if prisoners refuse cellmates and are violent, Complaint ¶ 5; and (2) Mr. Cordero's assailant was transferred from Bridgewater State Hospital to SBCC and had "specifically warned the Defendants and their administration that he would 'hurt' and 'assault' whoever they try to move into his cell," Complaint ¶ 6.

a. Eighth Amendment Claim

A prison official's deliberate indifference to a substantial risk of harm to an inmate violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828 (1994). Although not every injury a prisoner suffers at the hands of another prisoner is actionable, prison officials must take reasonable measures to guarantee an inmate's safety from attacks by other inmates. Id. at 833-4.

To establish an Eighth Amendment claim for a failure to protect, a plaintiff must show that: (1) objectively, the deprivation alleged is sufficiently serious, i.e. that the conditions of incarceration pose a substantial risk of serious harm; and (2) subjectively, that the defendant was deliberately indifferent to the plaintiff's health or safety. Id. at 834. A prison official may be

liable for acting with deliberate indifference only if the official "knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Therefore, in order to establish deliberate indifference, a plaintiff must show: "(1) the defendant knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk." Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002).

        b.        Substantial Risk of Serious Harm

Mr. Cordero alleges that Defendants instituted a policy and practice of double-bunking prisoners even if prisoners refuse cellmates and are violent. Complaint ¶ 5. Taken as true, this allegation alone may satisfy the requirement of pleading a substantial risk of serious harm. See Calderon-Ortiz, 300 F.3d at 65-6 (finding that plaintiffs' allegations that defendants' housing of inmates without adequate regard to security needs sufficient to allege substantial risk of serious harm); Restucci v. Clarke, 669 F. Supp. 2d 150, 156 (D. Mass. 2009) (plaintiff's allegation that his mental health issues would compromise safety if he was placed in a double-bunked cell alleged a sufficiently serious deprivation); see also Cote v. Murphy, 152 Fed. Appx. 6 (1st Cir. 2005) (double-bunking may amount to an unlawful practice when combined with other adverse conditions).

In any event, even without his policy argument, Mr. Cordero alleges that he was choked into unconsciousness at the hands of his cellmate, Mr. Garcia, after Mr. Garcia was transferred from Bridgewater State Hospital and had warned Defendants that he would harm his next cellmate. Complaint ¶¶ 6, 10, 11, 14. "The risk of inmate-upon-inmate violence has been held a sufficiently serious harm to implicate inmates' constitutional rights." Calderon-Ortiz, 300 F.3d

9

at 66. The Defendants do not contest that at this early stage of the case Mr. Cordero has established the first prong of his Eighth Amendment claim. Accordingly, Mr. Cordero has sufficiently plead that the harm he suffered is objectively, sufficiently serious and that the conditions of confinement posed a substantial risk of serious harm.

### c. Deliberate Indifference

Defendants vigorously contest whether Mr. Cordero has sufficiently plead that Defendants were deliberately indifferent to his safety. As stated above, Mr. Cordero alleges that Defendants instituted a policy of double-bunking inmates even if prisoners refuse cellmates and are violent. Complaint ¶ 5. Mr. Cordero also alleges that despite the fact that Mr. Garcia, after being transferred from Bridgewater State Hospital, warned Defendants that he would harm his next cellmate, Mr. Garcia was then placed in Mr. Cordero's cell and he subsequently assaulted him. Complaint ¶¶ 6, 10, 11, 14. The Court finds that, taking Mr. Cordero's allegations as true, Mr. Cordero has "allege[d] specific facts from which deliberate indifference could be inferred." Calderon-Ortiz, 300 F.3d at 65. Most importantly, he specifically alleges that each Defendant had knowledge of the risk from Mr. Garcia.[3] Complaint ¶ 6.

Defendants argue that Mr. Cordero has failed to plead facts sufficient to show deliberate indifference because the attack on Mr. Cordero was "unexpected and unprovoked" and happened

---

[3] Defendants also argue that Mr. Cordero has failed to state sufficiently a claim for supervisory liability. Defendants correctly state that in order to state a claim for supervisory liability, Mr. Cordero must allege that Defendants were aware of facts from which the inference could be drawn that a substantial risk of harm exists, and that they drew this inference. See Farmer, 511 U.S. at 837. Yet here, Mr. Cordero has alleged that after being transferred from Bridgewater State Hospital, Mr. Garcia warned Defendants directly that he was going to harm his next cellmate and then was placed in a cell with Mr. Cordero. Accordingly, this argument fails at this stage of the case.

while he was asleep.  Defendant's Memo., p. 6.  Defendants also state that Mr. Cordero did not allege that he warned Defendants of any concerns he had for his safety or that Mr. Garcia threatened him before the alleged assault took place.  Id.  This argument, in this context, is misplaced.  "[A] prisoner need not wait to be assaulted to obtain relief."  Purvis v. Ponte, 929 F.2d 822, 825 (1st Cir. 1991).  Under Farmer, it is irrelevant "whether the prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."  511 U.S. at 843.  The First Circuit has held that prisoners do not have to identify a specific threat to be entitled to protection from inmate violence if an inmate alleges that a prison official had knowledge of facts from which an inference could be drawn that a substantial risk of serious harm existed and failed to reasonably respond to that risk.  See Calderon-Ortiz, 300 F.3d at 63-66 (finding allegations of deliberate indifference sufficient to withstand a motion to dismiss where the plaintiff alleged that he was assaulted by other inmates and that officials knew that dangerous inmates and vulnerable inmates were housed together and that officials were not making regular patrols of the housing area.).  Accordingly, taking Mr. Cordero's allegations as true, the Court finds that Mr. Cordero has plead facts sufficient to state a claim that Defendants were deliberately indifferent to his safety.

Although this Court finds that Mr. Cordero's claim survives Defendants' motion to dismiss, a higher standard will apply at the summary judgment stage.  At that point, the Court will consider whether Mr. Cordero can produce evidence sufficient to support his allegations regarding deliberate indifference.

    D.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity.  Defendants' Memo., p. 9-

12. The qualified immunity doctrine provides public officials an immunity from suit and not a mere defense to liability. Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). For this reason, immunity is to be resolved at the earliest possible stage of litigation. Id. A court must perform a two-step analysis in determining qualified immunity. Id. 268-9. A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendants' alleged violation. Id. A right is "clearly established" if at the time of the alleged violation, the contours of the right were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 269 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Court is not required to address these steps sequentially, and "the utility of bypassing the first prong is particularly apparent when qualified immunity is asserted at the pleading stage because the precise factual basis for the plaintiff's claim or claims may be hard to identify." Id. at 270 (internal quotation marks omitted).

At this point in the litigation, Mr. Cordero has raised sufficient allegations to defeat the qualified immunity defense. First, as described above, Mr. Cordero has sufficiently alleged violations of the Eighth Amendment pursuant to Section 1983. Second, Mr. Cordero's claims come under a clearly established right, namely the right to not be subjected to unsafe prison conditions resulting from prison officials' deliberate indifference. See Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009) ("Prison officials have a constitutional duty not to be deliberately indifferent to the risk to prisoners of violence at the hands of other prisoners.") (internal quotation marks omitted)). As such, Defendants are not entitled to qualified immunity at this stage of the litigation. The Court's conclusion on qualified immunity based on the allegations in

the complaint does not preclude the defendants from raising this defense at a later stage of this litigation, on a more developed factual record.

## III. CONCLUSION

For the foregoing reasons, I recommend that the District Court deny Defendants' motion to strike and grant Defendants' motion to dismiss the claim against Defendants in their official capacities and deny Defendants' motion to dismiss the claim against Defendants in their individual capacities.

## IV. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital,199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge